IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRAVIS WESTON, <br> (*also known as* Nafiabdul Basir), <br> *on behalf of himself and others similarly situated*, <br> #M07414, <br><br> Plaintiff, <br><br> vs. <br><br> JOHN BALDWIN, <br> JACQUELINE LASHBROOK, <br> FRANK LAWRENCE, <br> LLOYD HANNA, <br> HOWARD HARNER, and <br> JAMES CLAYCOMB, <br><br> Defendants. | Case No. 19-cv-01020-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Travis Weston, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), brings this action for alleged deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Weston asserts claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Doc. 1). He seeks a declaratory judgment, monetary damages, and injunctive relief.

The case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816,

1

821 (7th Cir. 2009).

## The Complaint

The Complaint alleges the following: Weston is a devout Muslim, and prison officials have been aware of his religious affiliation since he entered IDOC in 2009. He has been barred from participating in Jum'ah services and denied his religiously mandated halal/kosher diet.

On March 11, 2016, Weston was serving in the role of Imam for Jum'ah services. After the call for prayer, Weston stood to deliver the Khutbah in the Arabic language. Claycomb, a Chaplain at Menard, yelled for Weston to come out from behind the podium and told him that he could not deliver the Khutbah in that manner. Claycomb stated that if Weston continued, he would be removed from the Jum'ah list and barred from visiting the chapel. Weston advised Claycomb that was the only way to deliver the Khutbah. Claycomb told Weston the delivery was loud, disrespectful, and offensive. Weston returned to the podium and continued to deliver the Khutbah. Claycomb called for officers and had Weston removed from the chapel. Two days later, Weston was confronted at his cell by several officers who ordered him to cuff up; he was escorted to segregation and placed under investigation.

After removal from the Jum'ah list, Weston submitted request to the Chaplin for Jum'ah services and Ramadan accommodations to no avail. His request for Ramadan was denied because it did not arrive within the allotted time frame set by IDOC. On May 5, 2017, twenty-two days before Ramadan, Weston complained to Lawrence about his being denied participation in Ramadan. He told Lawrence that Harner, another Chaplain at Menard, had not made frequent trips to the cell house in the month of April to retrieve Ramadan request from the chaplin request box and so the claim that his request arrived late was disingenuous. Lawrence assured Weston that he would look into the matter. On May 9, Weston received a memo from Lawrence denying his

request to participate in Ramadan. Claycomb was influential in the decision by Harner and Lawrence to deny Weston's participation in Ramadan.

IDOC offers four basic menus – regular (includes pork and pork by-products), vegetarian, kosher, and medical (requires a doctor's prescription). Jewish inmates receive a kosher diet on request. IDOC does not offer Muslim inmates a strictly halal diet. Pre-prepared halal meals are commercially available. Other prison systems, including the Federal Bureau of Prison ("BOP"), provide halal meals. The number of Muslim inmates in the IDOC prison population exceeds the number of Jewish inmates. There are no Jewish inmates at Menard who are served kosher meals. The vegetarian menu is not specifically designed to meet the dietary needs of Muslim inmates and is nutritionally inadequate.

Muslim dietary laws have similar rules as Jewish dietary laws intended to prevent the "cross-contamination" of food. The Chaplin and Lashbrook approved Weston's request to be provided a kosher diet. Various food items are sold at Menard's commissary including kosher and halal items. The commissary does not provide a list that details which items are kosher or non-kosher and which items are halal or non-halal. There is no way of knowing which food items bear the certified labels for kosher or halal until the item is purchased and examined after which there are no refunds. Unlike inmates in grade diminution, the commissary computers are not programmed to alert the cashier that a particular item is restricted from purchase by those who receive religious diets.

Kosher breakfast arrives in a styrofoam container with cold cereal, packaged peanut butter, jelly, crackers, and two apples with powder milk. Hanna diminished the nutritional value of the kosher breakfast by removing peanut butter to wean Weston and other Muslim inmates from receiving kosher diets. Later Hanna sabotaged the kosher diet with non-kosher food including

boiled eggs and TVP prepared with the same pots, pants, and other utensils used to cook non-kosher food in kitchen. On August 31, 2018, Weston wrote a letter to Hanna regarding his concerns about the kosher breakfast tray. On February 19, 2019, Hamman told grievance officer Kelly Pierce that boiled eggs and TVP were kosher certified food. Hanna did not consult a religious leader of Weston's faith before serving prohibited articles of food but did so at the behest of Claycomb.

Hanna's action caused Weston to avoid eating breakfast. To compensate for the loss of the kosher breakfast, Weston traded kosher and halal commissary items with other inmates, which is a practice prohibited by IDOC regulations. On June 19, 2019, Weston received notice that Claycomb had terminated his kosher diet on the charge that from February 13 to May 22, 2019, Weston violated the terms and conditions of his contract by purchasing 28 non-kosher items from Menard's commissary. Other inmates who receive kosher diets have purchased similar items, but Claycomb has not terminated their kosher diets.

Eventually, Weston gave in and from time to time ate prohibited articles of food served in the kitchen. For the first several weeks, Weston experienced vomiting, minor headaches, and severe stomach aches. At times he went to sleep hungry because meals were nutritionally inadequate. Eating food from the kitchen increased Weston's anxiety that his prayers would not be accepted and that his physical health was at risk.

Baldwin, Lashbrook, and Lawrence enacted, adopted, and/or enforced policies and practices that substantially burdened Weston's practice of his religion including the following:

- adorning the chapel with Christian reading material but placing Islamic reading material under lock and key;

- allotting funds for holiday celebrations for Christian inmates but denying funds for celebration of two annual feast days for Muslim inmates;

4

- denying religious services by conditions created by overcrowding;

- refusing to allow possession of prayer oils and siwaks;

- creating pressure on Muslim inmates to consume meals that do not conform to tenets of their faith by denying a halal menu;

- locking down facilities during Ramadan;

- providing nutritionally inadequate meals to fasting Muslims during lockdown;

- retaliating against Muslim inmates who file lawsuits on matters related to Islam by transferring them to moot their claims and circumvent RLUIPA; and

- subjecting Muslim inmates to deprivation of Islamic related activities when they complain about the conditions of their confinement.

Based on the allegations in the Complaint, the Court finds it convenient to divide this action into the following counts:

**Count 1:** **First Amendment claim against Claycomb for substantially burdening Weston's practice of religion by prohibiting him from praying in accordance with his religious faith and denying him participation in religious services.**

**Count 2:** **First Amendment claim against Harner and Lawrence for substantially burdening Weston's practice of religion by denying him participation in Ramadan.**

**Count 3:** **First Amendment claim against Hanna and Claycomb for denying Weston a diet in compliance with his religious dietary restrictions.**

**Count 4:** **RLUIPA claim against Claycomb, Harner, Lawrence, and Hanna for denying Weston participation in religious services, participation in Ramadan, and a diet in compliance with his religious dietary restrictions.**

**Count 5:** **First Amendment retaliation claim against Claycomb for denying Weston participation in religious services, denying him a diet in compliance with his religious dietary restrictions, and placing him in segregation in response to Weston exercising his**

5

>    **religious beliefs.**
>
> **Count 6:** **First Amendment and/or RLUIPA claim against Baldwin, Lashbrook, and Lawrence for enacting, adopting, and/or enforcing policies and practices that substantially burden Weston's practice of his religion including the following:**
> - **adorning the chapel with Christian reading material but placing Islamic reading material under lock and key;**
> - **allotting funds for holiday celebrations for Christian inmates but denying funds for celebration of two annual feast days for Muslim inmates;**
> - **denying religious services by conditions created by overcrowding;**
> - **refusing to allow possession of prayer oils and siwaks;**
> - **creating pressure on Muslim inmates to consume meals that do not conform to tenets of their faith by denying a halal menu;**
> - **locking down facilities during Ramadan;**
> - **providing nutritionally inadequate meals to fasting Muslims during lockdown;**
> - **retaliating against Muslim inmates who file lawsuits on matters related to Islam by transferring them to moot their claims and circumvent RLUIPA; and**
> - **subjecting Muslim inmates to deprivation of Islamic related activities when they complain about the conditions of their confinement.**
>
> **Count 7:** **State law negligence claim against Claycomb, Harner, Hanna, and Lawrence.**
>
> **Count 8:** **State law negligent infliction of emotional distress claim against Claycomb, Harner, Hanna, and Lawrence.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designations do not constitute an opinion regarding their merit. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under**

the *Twombly* pleading standard.[1]

## Discussion

*Counts 1-3*

It is well-established that "a prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990). To state a claim under the free exercise clause of the First Amendment, a plaintiff must allege facts to plausibly suggest that his "right to practice [his chosen religion] was burdened in a significant way." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005). A religious diet is substantially burdened when officials force an inmate to choose between his religious practice and adequate nutrition. *Id.* at 879; *Hunafa*, 907 F.2d at 47 (failure to ensure staff kept pork products separate from pork substitute substantially burdened Muslim inmate's practice of religion). Weston's allegations are sufficient to proceed on his claims in Counts 1-3 against Claycomb, Harner, Lawrence, and Hanna.

*Count 4*

Inmates are afforded broader religious protections under RLUIPA, which prohibits prisons receiving federal funds from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C.A. § 2000cc-1; *Schlemm v. Wall*, 784 F.3d 362, 363 (7th Cir. 2015).

---

[1] An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

7

Although Weston has generally stated a colorable RLUIPA claim, RLUIPA does not authorize a suit for money damages against defendants in their individual capacities. *Grayson v. Schuler,* 666 F.3d 450, 451 (7th Cir. 2012); *Maddox v. Love,* 655 F.3d 709, 717 (7th Cir. 2011). Therefore, the RLUIPA claim in Count 4 against Defendants in their individual capacities shall be dismissed with prejudice. But a court may order injunctive relief to correct a violation of RLUIPA, 42 U.S.C.A. § 2000cc-2. As the Warden of Menard, Frank Lawrence is a proper defendant for injunctive relief. *See Gonzalez*, 663 F.3d at 315 (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out). Lawrence will be added in his official capacity, and the RLUIPA claim shall proceed only against him.

*Count 5*

To state a claim for retaliation under the First Amendment, a plaintiff must allege that (1) he engaged in constitutionally protected speech, (2) he suffered a deprivation likely to deter protected speech; and (3) his protected speech was a motivating factor in the defendants' actions. *Antoine v. Ramos*, 497 F. App'x 631, 634 (7th Cir. 2012). "A complaint states a claim for retaliation when it sets forth a chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (internal citation omitted). Weston's allegations are sufficient for the retaliation claim in Count 5 to proceed against Claycomb.

*Count 6*

Weston's allegations are sufficient for the claim in Count 6 to proceed against Baldwin, Lashbrook and Lawrence. To the extent a RLUIPA claim is raised in Count 6, it will proceed only against Lawrence in his official capacity as the Warden of Menard.

*Counts 7 and 8*

An Illinois negligence claim for personal injuries requires the plaintiff to demonstrate the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Iseberg v. Gross*, 879 N.E.2d 278 (2007). To state a claim of negligent infliction of emotional distress under Illinois law, a plaintiff must allege: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; and (3) that plaintiff's injury was proximately caused by that breach. *Parks v. Kownacki*, 737 N.E.2d 287, 296-297 (Ill. 2000). Weston bases his state law claims on the facts that serve as the basis for Counts 1-3. This Court has supplemental jurisdiction over the claims because they involve the same facts as the federal claims. *See* 28 U.S.C. § 1367(a). At the screening stage, Weston's allegations are sufficient to proceed on the claims in Counts 7 and 8 against Claycomb, Harner, Hanna, and Lawrence.

## **Request for Injunctive Relief**

Weston seeks preliminary injunctive relief in his Complaint, but he did not set forth the reasons he is entitled to such relief. The Court previously entered an Order giving him until October 21, 2019, to file a separate motion for preliminary injunction if he wanted to pursue that request. (Doc. 5). Thereafter, he was granted two extensions of time, and the motion is now due by January 2, 2020. (Docs. 13, 17). Failure to file the motion by that deadline will result in denial of the request without prejudice. With respect to the request for preliminary injunctive relief, Lawrence, as the Warden of Menard, is an appropriate official capacity defendant. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

## **Class action**

Weston purports to bring a class action on behalf of unknown plaintiffs who are similarly situated. Weston is the only individual who signed the Complaint, and the Motion for Leave to

Proceed *in forma pauperis*. Because Weston is proceeding *pro se*, he cannot represent a class of plaintiffs. *Lewis v. Lenc-Smith Mgf. Co.*, 784 F.2d 829, 831 (7th Cir. 1986); 28 U.S.C. § 1654; FED. R. CIV. P. 11. Therefore, to the extent that Weston seeks class certification, the request is denied.

### Disposition

**IT IS HEREBY ORDERED** that Count 1 will proceed against Claycomb. Count 2 will proceed against Harner and Lawrence. Count 3 will proceed against Hanna and Claycomb. Count 4 will proceed against Lawrence in his official capacity as the Warden of Menard Correctional Center and is dismissed as to the remaining Defendants. Count 5 will proceed against Claycomb. Count 6 will proceed against Baldwin, Lashbrook and Lawrence but the RLUIPA claim will proceed only against Lawrence in his official capacity as the Warden of Menard Correctional Center. Counts 7 and 8 will proceed against Claycomb, Harner, Hanna, and Lawrence.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Claycomb, Harner, Hanna, Baldwin, Lashbrook, and Lawrence (individual and official capacities): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Weston. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant cannot be found at the work address provided by Weston, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-

known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Defendants shall timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.

**IT IS FURTHER ORDERED** that if judgment is rendered against Weston, and the judgment includes the payment of costs under Section 1915, Weston will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

**IT IS FURTHER ORDERED** that this entire matter shall be **REFERRED** to a United States Magistrate Judge pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral*.

Finally, Weston is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

IT IS SO ORDERED.

DATED:  December 2, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Weston is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Weston need not submit any evidence to the Court at this time, unless specifically directed to do so.**