IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRAVIS WESTON, #M07414, <br><br>  Plaintiff, <br><br> v. <br><br> JOHN BALDWIN, JACQUELINE LASHBROOK, FRANK LAWRENCE, LLOYD HANNA, HOWARD HARNER, and JAMES CLAYCOMB, <br><br> Defendants. | Case No. 19-cv-01020-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Travis Weston, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for the violation of his First Amendment rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

Pending before the Court are the following motions filed by Weston: Motion for Preliminary Injunction (Doc. 29), Motion for Reconsideration and Modification (Doc. 30), Motion for Leave to File Amended Complaint (Doc. 42), Motion to Strike (Doc. 45), and Motion for the Imposition of Sanctions on Conduct (Doc. 46).

### MOTION FOR RECONSIDERATION AND MODIFICATION

Weston has filed a Motion for Reconsideration and Modification asking the Court to modify the merit review order entered on December 2, 2019. (Doc. 30). First, he states

that in Count 4, the Court overlooked the fact that RLUIPA authorizes punitive damages. Second, he states that in Count 6, the Court mistakenly dismissed Baldwin as an official capacity defendant from his RLUIPA claim. For the following reasons, the Court grants in part and denies in part the motion.

The Federal Rules of Civil Procedure do not explicitly contemplate motions to reconsider. Nevertheless, the Seventh Circuit has approved of district courts construing motions pursuant to the standards set forth in Federal Rule of Civil Procedure 59(e) or 60(b) if it appears that a party is requesting relief available under those Rules. *United States v. Deutsch*, 981 F.2d 299, 300 (7th Cir. 1992). A motion to reconsider filed more than 28 days after entry of the challenged order, "automatically becomes a Rule 60(b) motion." *Hope v. United States*, 43 F.3d 1140, 1143 (7th Cir.1994) (citing *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir.1992)); *see also Talano v. N.W. Med. Faculty Found., Inc.*, 273 F.3d 757, 762 (7th Cir.2001). The Court issued its merit review order on December 2, 2019 (Doc. 19), and Weston's filed his motion January 3, 2020, after the 28 day period had expired. Thus, as a Rule 59(e) motion, the motion is time barred, and the Court will construe the motion as filed pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

Rule 60(b) permits a court to relieve a party from an order or judgment based on such grounds as "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). Relief under Rule 60(b) is an extraordinary remedy and is only granted in exceptional circumstances. *McCormick v. City of Chi.*, 230 F.3d 319, 327 (7th Cir. 2000). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th

Cir. 1996).

### Count 4

Weston asks the Court to reinstitute his RLUIPA claim against Claycomb, Harner, Lawrence, and Hanna for punitive damages in their individual capacities. He essentially argues that the Court made a mistake because in *Nelson v. Miller,* 570 F.3d 868 (7th Cir. 2009), the Seventh Circuit did not bar all claims for damages against defendants in their individual capacities, and the undersigned should consider decisions from other districts allowing plaintiffs to claim nominal or punitive damages against defendants. (Doc. 30, p. 5) (citing *Shidler v. Moore,* 446 F. Supp. 2d 942 (N.D. Ind. 2006), *Andreola v. State of Wis.,* No. 04-c-0282, 2006 WL 2038364 (E.D. Wis. 2006), *Meyer v. Teslik,* 411 F. Supp. 2d 983 (W.D. Wis. 2006)).

In *Nelson,* however, the Seventh Circuit did hold that RLUIPA does not authorize a suit for money damages against defendants in their individual capacities. 570 F. 3d at 889 ("we decline to read RLUIPA as allowing damages against defendants in their individual capacities."). *See also Maddox v. Love,* 655 F.3d 709, 717 (7th Cir. 2011); *Grayson v. Schuler,* 666 F.3d 450, 451 (7th Cir. 2012) (RLUIPA "does not create a cause of action against state employees in their personal capacity."). Weston mistakenly asserts that because the Seventh Circuit in *Nelson, Grayson,* or *Maddox* did not expressly overrule the district court cases he references that those cases should be given the weight of authority in the Seventh Circuit for permitting claims for punitive damages under RLUIPA. (Doc. 30, p. 6). "[T]he decision of a district court has no authority as precedent[,]" *Flying J, Inc. v. Van Hollen,* 578 F.3d 569, 573 (7th Cir. 2009), and "a lower court has no authority

to reject a doctrine developed by a higher one." *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986). Accordingly, Weston has not shown a mistake or an exceptional circumstance for the Court to modify Count 4 and allow claims for punitive damages under RLUIPA.

## Count 6

In the merit review order, the Court allowed the RLUIPA claim in Count 6 to proceed against only Lawrence, in his official capacity as the Warden of Menard, and dismissed the RLUIPA claim against John Baldwin in his official capacity. Weston argues that John Baldwin should not have been dismissed because he is seeking relief from policies that are implemented systemwide throughout IDOC, and not just Menard. Therefore, John Baldwin, the director of IDOC, is also a correct defendant.

The Court finds the Weston has established a mistake in fact made by the Court in screening the Complaint to the extent that the merit review order did not include Weston's claim regarding widespread policies throughout IDOC that have substantially burdened his ability to practice his religion. The proper defendants regarding a RLUIPA claim are the supervisory government officials responsible for ensuring that the injunctive relief is carried out. *Strickland v. Godinez*, No. 14-cv-962-NJR-DGW, 2017 WL 1048154 at *4 (S.D. Ill. 2017) (citations omitted). As Weston is challenging practices and policies not only at Menard but within all of IDOC (*see* Doc. 1, p. 28), **Count 6 is amended so that Weston's RLUIPA claim shall also proceed against John Baldwin, in his official capacity.**

### MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

On February 19, 2020, the Court received a motion titled "Plaintiff's Motion for Leave to File Supplemental Complaint for Damaged Declaratory and Injunctive Relief." (Doc. 42). Along with the motion, Weston submitted the purposed supplemental complaint. The Clerk of Court docketed the motion as "Motion for Leave to File Amended Complaint." The next day, Weston filed an objection to the Court's recharacterization of his proposed supplemental complaint as an amended pleading. (Doc. 43). He argues he has not submitted a proposed amended complaint under Federal Rule of Civil Procedure 15(a), but a proposed supplemental pleading under Rule 15(d). Defendants filed a response stating that the proposed amended complaint does not conform with Local Rule 15.1, which requires all new material to be underlined. (Doc. 44).

The Court finds that as the proposed supplemental complaint asserts allegations about events that occurred after the Complaint was filed, it shall be treated as filed pursuant to Rule 15(d). The Clerk of Court will be directed to rename the pleading at Doc. 42 as follows: Motion for Leave to File Supplemental Complaint.

Under Rule 15(d) "[a] court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." A party does not have an absolute right to file a supplemental pleading. Rather, "the district court has substantial discretion either to permit or to deny such motion." *Chi. Reg'l Council of Carpenters v. Vill. of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011). Weston's proposed supplemental complaint brings allegations of retaliation as a result of filing this lawsuit. This Court generally will

not allow supplemental complaints for claims of retaliation that occurred after the complaint has been filed in prisoner cases. Not only do adding claims of ongoing retaliation delay resolution of the lawsuit, but typically the plaintiff also has not exhausted all available administrative remedies for the new claims alleged as is required under the Prisoner Litigation Act, 42 U.S.C. § 1997e(a).

Here, however, the Court finds that because Weston's Complaint alleges policies on the part of Defendants to retaliate against Muslim inmates who file lawsuits, the additional claims of retaliation appear to be appropriate for inclusion. Additionally, Weston claims that the grievance process has been made unavailable to him—hindering his ability to file grievances regarding the new claims. As there appears to be a factual dispute regarding exhaustion of administrative remedies, the Court will not use failure to exhaust to deny the motion to supplement at this time. The proposed supplemental complaint is also subject to review under 28 U.S.C. § 1915A. Therefore, the Court will screen the proposed supplemental complaint in accordance with this statute in conjunction with its consideration of Weston's motion.

Weston alleges the following in the proposed supplemental complaint: On December 19, 2019, he was approved by Menard's assignment committee to work in the inmate kitchen. He was also celled in North Lowers, which are cells assigned to inmates with job assignments. Each cell houses one inmate and comes with certain privileges, such as additional yard time, showers, and phone access. Weston reported on December 20, 2019, for his work assignment at 5:00 a.m. At around 8:45 a.m., he was informed by the inmate instructor that he was no longer allowed to work because of his pending

lawsuit against Lloyd Hanna. Following his termination, his telephone privileges were also suspended by members of Clinical Services. On December 22, 2019, he submitted a new telephone list to Clinical Services, and the list was returned to him a month later with the words invalid notated on the sheet. Weston submitted a request to Clinical Services for information relevant to job reassignment, and he was informed by his correctional counselor that his evaluation form stated that he did not want to work. He claims that Baldwin, Lashbrook, and Lawrence have been aware of repeated instances of retaliatory conducted against inmates who seek relief from prison conditions through legal proceedings.

On January 10, 2020, he went to the chapel, where Chaplain Claycomb talked to him about renewing his kosher diet contract. Weston did not sign the kosher diet contract because the new contract had a list of permitted food items that could be purchased from the commissary, and the list did not include certain halal certified products. That same day he was reassigned from his single cell for inmates with job assignments to a small dirty cell, with a cellmate. With this cell assignment, he was limited to three days of recreation and three showers per week.

Upon review of the proposed supplemental complaint, the Court finds that Weston's claims regarding the events that took place in January 2020 with Chaplain Claycomb are additional incidents of the continual denial of his religious dietary restrictions, as designated in **Count 3** of the merit review order. (Doc. 19). The Court also finds that Weston has alleged the following additional Counts:

|   |   |
|---|---|
| **Count 9:** | First Amendment claim against Hanna for retaliating against Weston for filing this lawsuit by terminating him from his job assignment. |
| **Count 10:** | First Amendment claim against Baldwin, Lashbrook, Lawrence, and Hanna for implementing unconstitutional practices and policies of retaliation. |
| **Count 11:** | Fourteenth Amendment and Article 1 § 10 contract claim against Hanna for violating Weston's due process rights in terminating his job assignment without notice. |
| **Count 12:** | State law negligence claim against Baldwin, Lawrence, Lashbrook, and Hanna regarding the retaliatory conduct of staff within their respective departments. |
| **Count 13:** | First Amendment claim against Baldwin, Lawrence, Lashbrook, and Hanna for depriving Weston of his right to access the courts. |

### Count 3

In the Complaint, Weston alleges that Hanna replaced peanut butter on his religious diet kosher breakfast tray with non-kosher boiled eggs and TVP and falsely told the grievance officer that those items were kosher certified, and Chaplain Claycomb terminated his kosher diet for purchasing prohibited items from the commissary. The proposed supplemental complaint adds claims that his religious diet continues to be substantially burdened by Claycomb and Lawrence. He claims that in January 2020, Claycomb presented him with a contract that would allow him to again start receiving an alternative religious diet but would prohibit the purchase of certain halal items from the commissary. He claims that Lawrence was involved in making the decision to prohibit these items. These allegations are sufficient to add to Count 3, which will now proceed against Hanna, Claycomb, and Lawrence.

**Count 9**

Weston's claim that because he filed this lawsuit, Hanna retaliated against him by terminating him from his job assignment survives screening. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citation omitted). Count 9 will proceed against Hanna.

His claims that he lost telephone and email privileges, however, will be dismissed as he has not asserted this claim against any named defendant. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2); *see also Minix v. Canarecci,* 597 F.3d 824, 833 (7th Cir. 2010).

**Count 10**

Weston claims that there are widespread practices by staff in IDOC to retaliate against inmates who file lawsuits and grievances, and these practices and policies were implemented by Baldwin, Lashbrook, Lawrence, and Hanna. He alleges that the injuries he has described were caused in substantial part by the policies and practices. Allegations that senior officials were personally "responsible for creating the policies, practices and customs that caused the constitutional deprivations… suffice at this stage in the litigation to demonstrate…personal involvement in [the] purported unconstitutional conduct." *Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 615 (7th Cir. 2002). The Court will allow Count 10 to proceed against Baldwin, Lashbrook, Lawrence, and Hanna for implementing unconstitutional policies.

The Court notes that although Weston brings these claims pursuant to *Monell v. Dep't of Soc. Serv. of City of N.Y.,* 436 U.S. 658 (1978), claims under *Monell* can only be asserted against local government units and not against state agencies. *See Phillips v.*

*Baxter,* 768 F. App'x 555, 560 (7th Cir. 2019). Therefore, claims brought pursuant to *Monell* are dismissed. Weston also alleges that the retaliation practices have harmed other inmates, and he seeks injunctive relief and compensation for other inmates similarly situation. Weston is only entitled to assert his own rights, however, and the Court will only consider the alleged harms to him, not to the inmate population generally. *Massey v. Helman,* 196 F.3d 727, 739-40 (7th Cir. 1999).

**Count 11**

Prisoners have no liberty interest in prison employment and, therefore, Weston cannot state a due process claim for the loss of his job assignment without notice. *Starry v. Oshkosh*, 731 F. App'x 517, 518 (7th Cir. 2018) (citing *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000)); *see also Garza v. Miller,* 688 F.2d 480, 485–86 (7th Cir. 1982). Therefore, his due process claims regarding termination from his kitchen assignment are dismissed.

Weston also claims that he entered into a contract with IDOC and that the Illinois Unified Code of Corrections granted him the right to acquire work related skills. He argues that Hanna impeded his contractual duties and relies on the Contract Clause, Article 1, Section 10, of the United States Constitution, which provides that no state shall impair the obligation of contracts. This argument also fails. A cause of action under the Contract Clause must be based on a legislative act that impairs a contractual relationship. *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992). Weston does not assert that a change in state law has altered his contractual relationship with the State of Illinois. Furthermore, a plaintiff cannot enforce state regulations or policies through a Section 1983 action. *See James v. Pfister,* 708 F. App'x 876, 879 (7th Cir. 2017). For these reasons,

Count 11 is dismissed with prejudice.

### Count 12

Weston claims that Baldwin, Lawrence, Lashbrook, and Hanna were negligent in their duties to maintain, operate, and supervise of their respective departments by not investigating retaliatory behavior by staff, training staff, or disciplining staff engaging in retaliatory conduct. The Court will exercise supplemental jurisdiction and allow Count 12 to proceed. *See* 28 U.S.C. § 1367(a); *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) (citing *Iseberg v. Gross,* 879 N.E.2d 278 (2007)).

### Count 13[1]

Weston claims that Baldwin, Lashbrook, Lawrence, and Hanna have engaged in a conspiracy to cover up staff misconduct by discouraging the filing of grievances, failing to process grievances, and making the grievance forms unavailable. This has resulted in a violation of Weston's rights to access the courts.

It is well-settled, however, that issues with grievance procedures do not constitute violations of the First or Fourteenth Amendments. Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the due process clause of the Fourteenth Amendment. *Owens v. Hinsley*, 635 F.3d 950, 953-54; George, 507 F.3d at 609. And, to the extent that Weston alleges Defendants' actions have interfered with his access to the courts, this claim also fails. The unavailability of administrative remedies is not a bar to potential litigants bringing their

---

[1] Although Weston states that he alleges this claim in the alternative to his other claims, the Court will still review this claim pursuant to Section 1915A.

claims. *See Hill v. Snyder*, 817 F.3d 1037, 1041 (7th Cir. 2016). Thus, Weston fails to allege that Defendants' actions hampered his access to the courts, and Count 13 is dismissed.

In light of this Order and for the purpose of clarity, Weston shall now be proceeding with the following claims:

**Count 1:** First Amendment claim against Claycomb for substantially burdening Weston's practice of religion by prohibiting him from praying in accordance with his religious faith and denying him participation in religious services.

**Count 2:** First Amendment claim against Harner and Lawrence for substantially burdening Weston's practice of religion by denying him participation in Ramadan.

**Count 3:** First Amendment claim against Hanna, Claycomb, and Lawrence for denying Weston a diet in compliance with his religious dietary restrictions.

**Count 4:** RLUIPA claim against Claycomb, Harner, Lawrence, and Hanna for denying Weston participation in religious services, participation in Ramadan, and a diet in compliance with his religious dietary restrictions.

**Count 5:** First Amendment retaliation claim against Claycomb for denying Weston participation in religious services, denying him a diet in compliance with his religious dietary restrictions, and placing him in segregation in response to Weston exercising his religious beliefs.

**Count 6:** First Amendment claim against Baldwin, Lashbrook, and Lawrence and RLUIPA claim against Lawrence and Baldwin for enacting, adopting, and/or enforcing policies and practices that substantially burden Weston's practice of his religion including the following:
- adorning the chapel with Christian reading material but placing Islamic reading material under lock and key;
- allotting funds for holiday celebrations for Christian inmates but denying funds for celebration of two annual feast days for Muslim inmates;

- denying religious services by conditions created by overcrowding;
- refusing to allow possession of prayer oils and siwaks;
- creating pressure on Muslim inmates to consume meals that do not conform to tenets of their faith by denying a halal menu;
- locking down facilities during Ramadan;
- providing nutritionally inadequate meals to fasting Muslims during lockdown;
- retaliating against Muslim inmates who file lawsuits on matters related to Islam by transferring them to moot their claims and circumvent RLUIPA; and
- subjecting Muslim inmates to deprivation of Islamic related activities when they complain about the conditions of their confinement.

**Count 7:** State law negligence claim against Claycomb, Harner, Hanna, and Lawrence for their conduct regarding Weston's religious rights.

**Count 8:** State law negligent infliction of emotional distress claim against Claycomb, Harner, Hanna, and Lawrence.

**Count 9:** First Amendment claim against Hanna for retaliating against Weston for filing this lawsuit.

**Count 10:** First Amendment claim against Baldwin, Lashbrook, Lawrence, and Hanna for implementing unconstitutional practices and policies of retaliation.

**Count 12:** State law negligence claim against Baldwin, Lashbrook, Lawrence, and Hanna regarding the retaliatory conduct of staff within their respective departments.

**MOTION TO STRIKE AND MOTION FOR SANCTIONS**

Weston has filed a Motion to Strike Defendants' Objection (Doc. 45) and a Motion for the Imposition of Sanctions (Doc. 46). Weston argues that Defendants' Objection to his motion to supplement the complaint should be stricken, and they should be sanctioned for objecting to his motion based on Local Rule 15.1, which is not applicable

to his proposed supplemental complaint. He states that counsel for the defendants knew or should have known that Local Rule 15.1 has no bearing on his motion. (Doc. 46, p. 2).

The Court finds that Defendants' Objection was not filed in bad faith. The Clerk of Court docketed Weston's motion as a motion to amend the complaint and so Defendants will not be punished for filing their responsive pleading accordingly. Weston's motions have not demonstrated that Defendants' Objection is "redundant, immaterial, impertinent, or scandalous matter" as required under Federal Rule of Civil Procedure 12(f) or that Defendants' conduct has abused the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Therefore, the motions are denied. *See Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1059 (7th Cir. 1998) (sanctions are only "invoked with the utmost caution").

## MOTION FOR PRELIMINARY INJUNCTION

Weston has filed a Motion for Preliminary Injunction requesting that the Court order Defendants to (1) restore his kosher diet, as it was before it was sabotaged and terminated; (2) allow him to participate in the work program and be assigned to the law library as a clerk; and (3) restore his telephone and email privileges. (Doc. 29 at p. 11).

Although the Court is allowing Weston to proceed on his claims of retaliation regarding termination from his job assignment, he has not demonstrated how he will be irreparably harmed by not being placed in another job or that there is urgency in addressing this matter outside of the normal timeframe for this legal action. Furthermore, the Court has dismissed his claims regarding loss of telephone and email services. *See Daniels v. Dumsdorff*, No. 19-cv-00394, 2019 WL 3322344 at *1 (S.D. Ill. July 24, 2019)

(citations omitted). Thus, to the extent that Weston requests injunctive relief for the restoration of his job and telephone and email privileges, the request for emergency injunctive relief is denied.

The Court finds, however, that his request for the restoration of his religious diet warrants prompt consideration. Accordingly, the Court will address that request as soon as practicable. **A hearing on the request for a preliminary injunction regarding the denial of a diet in compliance with his religious dietary restrictions of will be set in a separate court order**. S**cheduling may be delayed, however, because of restrictions imposed by the COVID-19 pandemic.**

## DISPOSITION

For the reasons stated above, pursuant to Rule 15(d) and after review of the proposed supplemental complaint pursuant to 28 U.S.C. § 1915A, the Court **GRANTS** Weston's Motion for Leave to File Supplemental Complaint. (Doc. 42). The Clerk of Court is **DIRECTED** to file the Supplemental Complaint and to **RENAME** the pleading at Doc. 42 as follows: Motion for Leave to File Supplemental Complaint. **Count 3**, as designated in the merit review order (Doc. 9), shall now proceed against **Hanna, Claycomb,** and **Lawrence. Count 9** shall proceed against **Hanna**, and **Counts 10** and **12** shall proceed against **Baldwin, Lashbrook, Lawrence,** and **Hanna. Counts 11** and **13** are **DISMISSED**.

The Motion for Reconsideration (Doc. 30) is **GRANTED in part** and **DENIED in part. Count 6** shall proceed against **Baldwin, Lashbrook,** and **Lawrence,** in their individual capacities, and also against **Baldwin** and **Lawrence** in their official capacities

as to the claim under RLUIPA.

The Motion to Strike (Doc. 45) and the Motion for the Imposition of Sanctions (Doc. 46) are **DENIED**.

The Motion for Preliminary Injunction (Doc. 29) remains pending, and a hearing shall be set in a separate order. The hearing on the motion shall be limited to Weston's claims regarding his religious diet.

**IT IS SO ORDERED.**

DATED:   April 20, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**